## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LEE A. ISRAEL,                          )
                                        )
            Petitioner,                 )
                                        )
      v.                                )          Civ.Act.No. 06-124-SLR
                                        )
THOMAS CARROLL, Warden                  )
and CARL C. DANBERG, Attorney           )
General for the State of Delaware       )
                                        )
            Respondents.                )

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. §

2254, respondents state the following in response to the petition for a writ of habeas

corpus:

On November 12, 1985, the petitioner, Lee A. Israel, was convicted in a Delaware

Superior Court jury trial of first degree rape, first degree burglary, second degree

attempted burglary, and misdemeanor theft. *Israel v. State*, 1986 WL 17349, *1 (Del.

1986)(*Israel I*)(Exhibit A). Israel was sentenced to a term of life imprisonment plus 52

years. *Id.* On appeal, the Delaware Supreme Court affirmed Israel's convictions and

sentence. *Id.* at *5. In July 1995, Israel filed his first motion for postconviction relief,

which was denied by the Delaware Superior Court. *State v. Israel*, 1996 WL 190033

(Del. 1996)(*Israel II*)(Exhibit B). Superior Court held that, because Israel had filed his

motion more than three years after his convictions had become final, the motion was

barred by Delaware Superior Court Criminal Rule 61(i)(1). *Id.* at *1. Further, Superior

Court held that Israel's claims were without merit. *Id.* at *2. Superior Court's decision

in *Israel II* was affirmed by the Delaware Supreme Court in May 1996. *Israel v. State,*
1996 WL 283596 (Del. 1996)(*Israel III*)(Exhibit C). Israel filed his second motion for
postconviction relief in July 2004, which was summarily dismissed by Superior Court.
*State v. Israel*, 2004 WL 2240158 (Del. 2004)(*Israel IV*)(Exhibit D). The Delaware
Supreme Court affirmed Superior Court's dismissal of Israel's second postconviction
motion. *Israel v. State,* 2005 WL 535349 (Del. 2005)(*Israel V*)(Exhibit E).

**Discussion**

In his petition for federal habeas relief, Israel raises the following grounds for
relief: (1) the Superior Court abused its discretion by not instructing the jury on the
lesser-included offense of criminal trespass; (2) the prosecution knowingly elicited false
testimony from one of its witnesses. (D.I. 2 at 6-8; D.I. 3). Israel did not present these
issues on direct appeal of his convictions. *See Israel I.* Israel did not raise either of these
claims in his 1995 postconviction motion. *See Israel II.* Israel did, however, raise these
claims in his 2005 postconviction motion. *See Israel IV* and *Israel V.* The two claims are
accordingly exhausted.

*Claim One – Lesser-Included Offense*

Israel has asserted that the Superior Court abused its discretion by not instructing
the jury on the lesser-included offense of criminal trespass as to each of the charged
burglaries. In support of this contention, Israel suggests that the prosecution proffered
insufficient evidence at trial to establish the burglary charges. Israel is not entitled to
relief because the claims presented in his petition are untimely under 28 U.S.C. §
2244(d). Because Israel's petition was filed in February 2006, it is subject to the
Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the

2

President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder,* 988 F. Supp. 783, 802-03 (D. Del. 1997). Israel does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. §2244(d)(1)(B)-(D) are applicable. The Delaware Supreme Court affirmed Israel's conviction and sentence in 1986. *See Israel I.* Because Israel's convictions became final prior to the enactment of AEDPA, his habeas petition must have been filed prior to April 24, 1997 to be timely. *See Burns v. Morton,* 134 F.3d 109, 111-12 (3d Cir.1998).     Israel's petition, dated February 22, 2006 is obviously filed past the April 1997 deadline. The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In turn, the tolling mechanism of §2244(d)(1) does not save Israel's petition from the running of the limitations period. *See* 28 U.S.C. §2244(d)(2). When applicable, §2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. Section 2244(d)(2) provides only that the limitations period is tolled for the time that a motion for state postconviction relief is pending, but it does not stop the limitations clock from running until all state postconviction motions are decided. *See Marvel v. Dep't of Correction*, Civ. Act. No. 97-568-LON, order at ¶ 9 (D. Del. Nov. 17, 1998). Israel's 1995 postconviction motion did not act to toll the limitations period, as it was filed almost a year before AEDPA was enacted and was decided prior to April 1996.    State postconviction proceedings terminated prior to April 24, 1996 are not relevant to statutory tolling analysis. *Pauls v.*

*Kearney*, 2002 WL 31005827, at *3 n. 3 (D. Del. 2002)(Exhibit F). Israel did not file another motion for postconviction relief until July 2004, more than seven years after the one-year limitations period of § 2244 expired. Thus the statutory tolling provisions of §2244(d)(2) are of no aid to Israel.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001)(Exhibit G)(describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Israel has failed to allege or demonstrate any extraordinary circumstances that prevented him from filing his petition with the Court in a timely manner. Israel cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Israel's claims are untimely under § 2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine.

Alternatively, Israel's complaint about the jury instructions is procedurally barred. The state courts, in *Israel IV* and *V*, held the claim to be untimely under Superior Court Criminal Rule 61(i)(1), the claim being raised more than three years after Israel's convictions became final. This Court has previously decided that Superior Court Criminal Rule 61(i)(1) is an independent and adequate state procedural rule, the violation of which will preclude federal habeas relief unless the prisoner establishes cause for the default and actual prejudice stemming from the error. *E.g., Boyd v. Garraghty*, 202 F.Supp.2d 322, 330-31 (D.Del. 2002); *Bailey v. Snyder*, 1996 WL 434932, at *4-5

(D.Del. July 31, 1996)(Exhibit H). Israel offers no explanation for failing to comply with the time limits set out in Superior Court Criminal Rule 61(i)(1). *See Bailey*, 1996 WL 434932, at *5. Because Israel offers no basis for the Court to conclude that he has established cause for the default, there is no reason for the Court to decide whether Israel has established actual prejudice. *E.g.*, *Carter v. Neal*, 910 F.Supp. 143, 151 (D.Del. 1995).

*Claim Two – Prosecutorial Misconduct*

Israel next claims that the prosecution knowingly proffered false testimony in connection with footprint evidence. *See generally, e.g.*, *Napue v. Illinois*, 360 U.S. 264 (1959). Superior Court summarized Israel's claim thusly:

> [T]he prosecutor knowingly presented false testimony when she allowed a police expert witness to testify that the shoe prints found at the scene were from an athletic type-shoe [sic], a sneaker-type shoe. Israel argues that this is false testimony because an FBI report sent to the New Castle County Police Chief stated that the shoe print lifts are too limited to determine the shoe sole design, manufacturer or brand name of the shoe making these shoe prints.

*Israel IV* at *2 (quotations omitted). Israel's contention was flatly rejected by Superior Court, who noted that the police expert's testimony was not contrary to the findings of the FBI report. The witness merely identified the shoe print as coming from an athletic shoe and did not comment on the sole design, manufacturer, or brand name of the source of the prints. *Id.* at *4. Because there was no inconsistency between the FBI report and the witness' testimony, the prosecution perforce did not present false testimony to the jury.

As with Israel's complaint about the jury instructions, this claim is untimely under §2244(d). In addition, this claim is procedurally barred, the state courts having decided

5

that the claim was untimely under Superior Court Criminal Rule 61(i)(1). Israel's challenge to the police officer's testimony should accordingly be dismissed.

### Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Israel's jury trial and jury charge have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: October 12, 2006

# Westlaw.

514 A.2d 413                                                                 Page 1

514 A.2d 413, 1986 WL 17349 (Del.Supr.)
**(Cite as: 514 A.2d 413)**

**H**
Israel v. StateDel.,1986.(The decision of the Court
is referenced in the Atlantic Reporter in a 'Table of
Decisions Without Published Opinions.')
Supreme Court of Delaware.
Lee ISRAEL, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 56, 1986.**

Submitted July 24, 1986.
Decided Aug. 22, 1986.

Superior Court, New Castle County

AFFIRMED.

Before CHRISTIE, Chief Justice, and McNEILLY
and HORSEY, Justices.

ORDER
CHRISTIE, Chief Justice.
*1 This 22nd day of August, 1986, it appears from
the record that:

(1) On July 24, 1986, appellee moved pursuant to
Rule 25(a) to affirm the judgment of Superior Court
on the ground that it is manifest on the face of
defendant's brief that the appeal is without merit.

(2) The defendant was convicted by a jury in
Superior Court of rape first degree, burglary first
degree, attempted burglary second degree, and theft
misdemeanor. He was sentenced to life
imprisonment plus fifty years. In his appeal, he
raises issues concerning the sufficiency of the
evidence to support his convictions of burglary first
degree and attempted burglary second degree and
an issue based on a claim that the trial court abused
its discretion in permitting a witness for the state to
testify concerning a footprint found on a washing
machine.

(3) The test for determining the sufficiency of
evidence to support a guilty verdict is Whether, in
viewing the evidence in a light most favorable to the
prosecution, any rational finder of fact could have
found the essential elements of the offense beyond a
reasonable doubt. *Jackson v. Virginia,* 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Davis
v. State,* Del.Supr., 453 A.2d 802 (1982).

(4) The defendant contends that the evidence was
insufficient to support his conviction of burglary
first degree in that there was insufficient evidence to
support a finding that he was armed with a knife.
*See* 11 *Del.C.* § 626(1). The victim did not see the
defendant with a knife. However, the victim
testified that a steak knife, found in the hallway just
outside her bedroom, was normally kept in a
silverware drawer in the kitchen. Neither she nor
her young son had removed it from the drawer in
the kitchen. The defendant's fingerprints were
found on a phone removed that night from the
residence. The phone cord had been cut,
apparently with a sharp object. Based on the
circumstantial evidence, the jury could have found
beyond a reasonable doubt that the defendant had
armed himself with the steak knife during the course
of the burglary.

(5) The defendant also contends that there was
insufficient evidence to show that he intended to
commit theft when he attempted to enter a different
dwelling on that same night. The evidence
reflected that an occupant of the house was asleep
on a couch and was awakened, apparently, by the
sound of a window above the couch being opened.
Looking up, she saw a man's leg dangling above
her. She screamed and the intruder fled. The
defendant's fingerprints were found on the window.

A jury may infer the intent of the defendant from
the circumstances surrounding his actions. 11
*Del.C.* S 307. we are of the opinion that an
attempted entry through a window at nighttime into
a residence where articles of value are likely to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

514 A.2d 413, 1986 WL 17349 (Del.Supr.)
**(Cite as: 514 A.2d 413)**

found, coupled with flight when discovered, constitutes sufficient evidence to permit a jury to infer an intent to steal, absent evidence of some other plan or motive. *See State v. Sweezy,* N.C.Supr., 230 S.E.2d 524, 535-36 (1976); *Com. v. Madison,* Pa.Super., 397 A.2d 818, 823-25 (1979). Accordingly, we find there was sufficient evidence on which to return a verdict of guilty of attempted burglary second degree.

*\*2* (6) The defendant's final argument is that the Court abused its discretion in ruling that a witness was qualified as a shoe print expert. Upon hearing testimony that the witness had received formal training in identifying different types of footwear in 1977 and had examined shoe prints at least a hundred times since then, the trial judge found the witness qualified to testify as an expert in identifying types of prints left by footwear. Defendant argues that the witness was not qualified because he had not received more recent formal training nor had he done reading on the subject. Under D.R.E. 702, a witness may be qualified an an expert by his knowledge, skill, experience, training, or education. As this Court said in *Szewczyk v. Doubet,* Del.Supr., 354 A.2d 426, 428 (1976), a person qualifies as an expert simply by being more skillful in the field than others not so trained or experienced. This witness's training and experience clearly showed that he was more able and skilled in identifying types of shoe prints than the average person would be. We find that the trial judge did not abuse his discretion in ruling that the witness was qualified as an expert.

It is manifest on the face of appellant's brief that the appeal is without merit because the issues on appeal are either factual, and clearly there is sufficient evidence to support the verdict of the jury, or they are issues of judicial discretion and clearly there -was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm the judgment of the Superior Court is granted, and that judgment is AFFIRMED.

Del.,1986.

Israel v. State
514 A.2d 413, 1986 WL 17349 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                                                Page 1

Not Reported in A.2d, 1996 WL 190033 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
State v. IsraelDel.Super.,1996.Only the Westlaw
citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, New Castle County.
STATE of Delaware
v.
Lee A. ISRAEL
**No. CR.A. IN85-05-0326, CR.A. IN85-05-0327,
CR.A. IN85-05-0328, CR.A. IN85-05-0330,
85050326DI.**

Submitted Nov. 28, 1995.
Decided Feb. 6, 1996.

Upon Defendant's Motion for Postconviction Relief.
DENIED.

Kathryn van Amerongen, Deputy Attorney General,
Department of Justice, Wilmington, Delaware, for
the State.
Lee A. Israel, Pro Se, Smyrna, Delaware, Movant.

*ORDER*
COOCH, District Judge.
**\*1** This 6th day of February, 1996, upon
consideration of the record in this case, it appears
that:

1. Movant Lee A. Israel ("Movant") has filed a *pro
se* motion for postconviction relief from a 1985
sentence of life plus 52 years for Rape First Degree
(former 11 *Del. C.* § 764), Burglary First Degree (
11 *Del. C.* § 826), Attempted Burglary Second
Degree (11 *Del. C.* § 531) and Theft Misdemeanor (
11 *Del. C.* § 841). Movant claims he is entitled to
relief because he received ineffective assistance of
counsel at trial. Because this motion was filed more
than three years after the judgment of conviction
was finalized and Movant has failed to demonstrate
the existence of a constitutional violation
undermining the fairness of the proceedings, the

motion fails on procedural and substantive grounds.
Super. Ct. Crim. R. 61(i)(1), (5).

2. Movant was originally charged with offenses
relating to three break-ins, one which occurred on
April 20, 1985, and two which occurred on April
21, 1985. With respect to the April 21 break-ins,
Movant was accused of starting to enter a residence
at 16 Karlyn Drive through a window, but being
frightened away by a resident. Less than an hour
later, Movant entered a home at 63 Chesterfield
Drive, raped a woman resident, stole her purse, cut
the cord of one of her phones and took it from the
house, the State charged. Movant's fingerprints were
recovered from 16 Karlyn Drive and from the
phone from 63 Chesterfield Drive, which had been
discarded in a neighboring yard. Movant's palm
print was recovered from inside 63 Chesterfield
Drive.

Movant was represented at trial by Edward F.
Eaton, Esquire. Before trial, Mr. Eaton moved to
sever the April 20 charges from the April 21
charges, as well as to sever a weapons charge from
the other April 21 charges. The prosecution nolle
prossed the April 20 charges, and the trial court
granted severance of the weapons charge, leaving
Movant to proceed to trial on four charges relating
to the two April 21 incidents. A jury convicted
Movant of the four charges, and the trial court
sentenced him to life (20 years of that mandatory
incarceration) for the Rape, 30 years for the
Burglary, 20 years for the Attempted Burglary, and
two years for the Theft.

Movant, represented by a different attorney after
trial, then appealed the conviction to the Delaware
Supreme Court. The Supreme Court concluded that
Movant's appeal was without merit and, therefore,
granted the State's motion to affirm the conviction.
*Israel v. State,* Del. Supr., No. 56, 1986, Christie, J.
(Aug. 22, 1986) (Order).

3. A postconviction motion filed more than three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                          Page 2

Not Reported in A.2d, 1996 WL 190033 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

years after the judgment is final is untimely and will be procedurally barred by Super. Ct. Crim. R. 61(i)(1). A movant may overcome this procedural bar, however, by showing the existence of "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." Super. Ct. Crim. R. 61(i)(5). The burden of proving the constitutional violation is on Movant. *Bailey v. State,* Del. Supr., 588 A.2d 1121, 1130 (1991) (citing *Younger v. State,* Del. Supr., 580 A.2d 552, 555 (1990)). "The fundamental fairness exception ... is a narrow one and has been applied only in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal." *Younger,* 580 A.2d at 555 (citing *Teague v. Lane,* 489 U.S. 288, 297-99 (1989)).

*2 4. In this case, Movant's judgment of conviction became final in 1986 when the Supreme Court affirmed the conviction. In an attempt to overcome the time bar and invoke the fundamental fairness exception, Movant alleges he received ineffective assistance of counsel in violation of his Sixth Amendment right. Specifically, he claims that Mr. Eaton was ineffective with respect to five different claims: (1) that he failed to move to sever the claims before trial; (2) that he failed to object to the prosecutor's opening statement and closing argument; (3) that he failed to object to certain hearsay testimony; (4) that he failed to object to the jury instructions; and (5) that he failed to object to an incorrect sentence. Mr. Eaton filed an affidavit with this Court in response to these claims.

After reviewing each of these claims, this Court finds that Movant has not demonstrated ineffective assistance of counsel. Consequently, he has not demonstrated a "constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings" which would render the time bar inapplicable. Super. Ct. Crim. R. 61(i)(5). Therefore, Movant's claims must fail both on the merits of the ineffective assistance of counsel claims and because they were filed more than three years after judgment.

5. In order to prevail on a claim of ineffective assistance of counsel, Movant must show : 1) "that counsel's representation fell below an objective standard of reasonableness," and 2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Albury v. State,* Del. Supr., 551 A.2d 53, 58 (1988) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984)); *Younger,* 580 A.2d at 556. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. Thus, if Movant were to prove his ineffective assistance of counsel claim, he would have satisfied the provision of Super. Ct. Crim. R. 61(i)(5) requiring "a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings[.]" Therefore, this Court will examine Movant's claims of ineffective assistance of counsel to determine both 1) whether Movant has substantively proved the claims of ineffective assistance of counsel, and 2) whether Movant has overcome the procedural bar of Rule 61(i)(1).

When evaluating the conduct of counsel, this Court must indulge "a strong presumption that counsel's conduct was professionally reasonable." *Albury,* 551 A.2d at 59 (citing *Strickland,* 466 U.S. at 689). Further, the Court must make "every effort ... to eliminate the distorting effects of hindsight [[[.]" *Strickland,* 466 U.S. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690. Using this standard, this Court will examine each of the claims.

*3 6. First, Movant claims that Mr. Eaton was ineffective for failing to move to sever the Rape, Burglary and Theft charges which arose out of the break-in of one residence, from the Attempted Burglary charge which arose out of the break-in of a different residence in the same area on the same day. Super. Ct. Crim. R. 14 provides that a defendant may move for severance of charges where it appears that he will be prejudiced by the joinder of the charges. Such a motion is addressed to the discretion of the trial court. *Weist v. State,* Del. Supr., 542 A.2d 1193, 1195 (1988).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1996 WL 190033 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

In his affidavit, Mr. Eaton stated that he did not believe that the facts warranted the severance now suggested by Movant. Mr. Eaton noted that there was evidence that the offenses were part of a common scheme or plan and occurred within close temporal and physical proximity and were, therefore, properly joined pursuant to Super. Ct. Crim. R. 8(a). Before trial, Mr. Eaton filed a motion to sever other charges, and was successful in getting a weapons charged severed from the remaining charges because of potential prejudice to Movant. Thus, Mr. Eaton made a strategic decision to move for severance of some claims and not others, based on his evaluation of the potential prejudice to Movant. This decision, made after a review of the relevant facts and law, is a proper exercise of counsel's ability to make strategic choices and does not amount to a finding that counsel's actions were professionally unreasonable. Further, Movant has not made a showing of actual prejudice resulting from counsel's failure to move for severance. Thus, Movant's first claim fails both prongs of the *Strickland* test.

7. Defendant next contends that Mr. Eaton failed to object to portions of the opening statement and closing argument, in which the prosecutor referred to Movant's fingerprints recovered from 63 Chesterfield Drive. In fact, the evidence showed that Movant's fingerprints were found at 16 Karlyn Drive (the site of the Attempted Burglary) and on the telephone taken from 63 Chesterfield Drive and discarded in a neighboring yard. The evidence further showed that palm prints belonging to Movant were found at 63 Chesterfield Drive. Thus, there was no evidence that Movant's fingerprints were found inside the residence at 63 Chesterfield Drive. However, each time during the opening statement that the prosecutor (a different Deputy Attorney General than now assigned to this case) mentioned the fingerprints that were found at the various sites, she elaborated and stated more specifically that Movant's palm print was found inside the residence. During testimony, the witnesses painstakingly explained that fingerprints were identified from 16 Karlyn Drive and the telephone and that a palm print was identified from 63 Chesterfield Drive. Further, the fingerprint expert witness testified that palm prints are

identified in the same manner that fingerprints. Thus, the evidence clearly showed that a palm print identified as Movant's was recovered from 63 Chesterfield Drive and that fingerprints were recovered from other places. The prosecutor did not misconstrue the evidence in her opening statement or closing argument. Therefore, Movant has failed to show that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[]" had Mr. Eaton objected to the prosecutor's interchange of the words "fingerprint" and "palm print." *Albury v. State,* 551 A.2d at 58 (quoting *Strickland v. Washington,* 466 U.S. at 694). Further, he has failed to show how Mr. Eaton's conduct fell below a reasonable professional standard when he decided not to object to the prosecutor's rather loose use of the word "fingerprint," in light of the fact that the attorneys and the witnesses clearly identified the print taken from 63 Chesterfield Drive as a "palm print." Thus, Movant has again failed to demonstrate either prong of the *Strickland* test.

*4 8. Movant's third claim is that Mr. Eaton was ineffective for failing to object to the testimony of New Castle County Police Detective James Hedrick, who was recalled by the State. Movant's mother, Mrs. Elizabeth Miller, had testified earlier that no one had asked her whether Movant had been home on April 21. Detective Hendrick was recalled and testified that he had in fact questioned Mrs. Miller about whether Movant had been home on April 21 and that she had told him that Movant had not been home on April 21. Thus, Detective Hendrick's testimony falls squarely within D.R.E. 801(d)(1)(A), which excludes from hearsay statements in which "[t]he declarant testifies at the tiral or hearing and is subject to cross examination concerning the statement, and the statement is (A) inconsistent with his testimony[.]" D.R.E. 801(d)(1)(A).

Movant's reliance on *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir. 1977), is inapposite, as that case dealt with F.R.E. 801(d)(1)(A), which differs from the corresponding Delaware Rule in that it requires an additional element: that the statement in question must have been "given under oath subject to the penalty of perjury at a trial, hearing, or other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 4

Not Reported in A.2d, 1996 WL 190033 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

proceeding, or in a deposition." *Id.* at 1380, n.3 (quoting F.R.E. 801(d)(1)(A)).

Therefore, since Movant has shown no basis on which Mr. Eaton could have objected to the testimony, he has failed to demonstrate that Mr. Eaton's conduct was ineffective.

9. Movant next contends that Mr. Eaton was ineffective for failing to object to the alibi portion of the jury instructions, which did not explicitly state that "alibi evidence could raise a reasonable doubt of defendant's guilt even if that evidence was not wholly believed by the jury." Once again, Movant's reliance on case law is misplaced, as he has cited the proposition advanced by a dissenting judge. *Commonwealth v. Johnson,* Pa. Super., 485 A.2d 397, 406 (1984) (dissent). The opinion of the Court in that case is clear, however, that an instruction is proper if it apprises jurors that they may consider alibi evidence as "sufficient to raise a reasonable doubt of [defendant's] guilt," and that they have a duty to find a defendant not guilty if the alibi evidence raises a reasonable doubt. *Id.* at 406. Similarly, the Delaware Supreme Court requires that the jury be apprised that:
[S]ince an alibi is only a denial of any connection with the crime, it must follow that if the proof adduced raises a reasonable doubt of the defendant's guilt, either by itself or in conjunction with all other facts in the case, the defendant must be acquitted.

*Jackson v. State,* Del. Supr., 374 A.2d 1, 2 (1977) (quoting *Halko v. State,* Del. Supr., 175 A.2d 42, 49 (1961)).

The jury instruction about which Movant now complains clearly complied with Delaware law. Specifically, this Court instructed the jury, "If the evidence [[[regarding alibi] raises in your mind a reasonable doubt as to the defendant's guilt, you must give him the benefit of the doubt and return a verdict of not guilty." Consequently, Mr. Eaton acted properly by refraining from objecting to this instruction. Therefore, Movant has failed to demonstrate ineffective assistance of counsel with regard to this claim.

**\*5** 10. Finally, Movant claims that the 20-year

mandatory portion of the life sentence he received in 1985 for the Rape conviction was illegal because a 1986 amendment to the Delaware Code removed the mandatory provision. 11 *Del. C.* § 4209A. Since Movant was convicted and sentenced prior to the July 9, 1986, this sentence was not affected by the amendment. *See State v. Haskins,* Del. Super., 525 A.2d 573 (1987). Thus, the sentence was properly imposed and Mr. Eaton was under no duty to object to sentencing on the basis of an amendment which had not yet come into existence.

11. Having failed to demonstrate either unreasonable conduct or prejudice, Movant cannot prevail on his claim of ineffective assistance of counsel. Thus, he has neither 1) overcome the time bar of Super. Ct. Crim. R. 61(i)(1), nor 2) substantively proved his claim of ineffective assistance of counsel. Accordingly, his motion for postconviction relief is DENIED.

IT IS SO ORDERED.

Del.Super.,1996.
State v. Israel
Not Reported in A.2d, 1996 WL 190033 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

682 A.2d 626                                                                     Page 1

682 A.2d 626, 1996 WL 283596 (Del.Supr.)
**(Cite as: 682 A.2d 626)**


**H**
Israel v. StateDel.,1996.(The decision of the Court
is referenced in the Atlantic Reporter in a 'Table of
Decisions Without Published Opinions.')
Supreme Court of Delaware.
Lee A. ISRAEL, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 99, 1996.**

Submitted: May 9, 1996.
Decided: May 21, 1996.


Court Below-Superior Court of the State of
Delaware, in and for New Castle County; Cr.A.
No. IN85-05-0326, -0327, -0328, and -0330.
Superior Court, New Castle County, 1996 WL
190033.

AFFIRMED.


Before VEASEY, C.J., WALSH, and HOLLAND,
JJ.

*ORDER*
WALSH, Justice.
*1 This 21st day of May, 1996, the Court has
considered the appellee's motion to affirm pursuant
to Supreme Court Rule 25(a) and finds it manifest
on the face of appellant's opening brief that the
appeal is without merit for the reasons stated by the
Superior Court in its well-reasoned decision dated
February 6, 1996.

NOW, THEREFORE, IT IS ORDERED that the
appellee's motion to affirm is GRANTED. The
judgment of the Superior Court is AFFIRMED.

Del.,1996.
Israel v. State
682 A.2d 626, 1996 WL 283596 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                                 Page 1

Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware.
STATE of Delaware
v.
**Lee A. ISRAEL** Defendant
Submitted July 1, 2004.
Decided Sept. 24, 2004.

Upon Defendant's Motion for Postconviction Relief.

SUMMARILY DISMISSED.
COOCH, J.

*ORDER*

*1 Upon this 24th day of September, 2004 it
appears to the Court that:

1. Defendant Lee A. Israel ("Israel") has filed his
second motion for postconviction relief. Israel filed
his first motion in July of 1995, which was filed
more than three years after his conviction became
final.[FN1] In his first motion for postconviction
relief, Israel alleged ineffective assistance of
counsel on the part of his trial lawyer, Edward F.
Eaton. To support his motion, Israel made five
claims of ineffective assistance of counsel: (1) that
Mr. Eaton failed to move to sever the claims before
trial; (2) that he failed to object to the prosecutor's
opening statement and closing argument; (3) that he
failed to object to certain hearsay testimony; (4) that
he failed to object to the jury instructions; and (5)
that he failed to object to an incorrect sentence.
This Court denied Israel's first motion for
postconviction relief on the grounds that the motion
was time barred pursuant to Superior Court
Criminal Rule 61(i)(1).[FN2] In denying his motion,
this Court held that Israel had not "demonstrated a '
constitutional violation that undermined the
fundamental legality, reliability, integrity or fairness

of the proceedings' which would render the time bar
inapplicable. Super. Ct.Crim. R. 61(i)(5)." [FN3]
Further, this Court found that "[i]n an attempt to
overcome the time bar and invoke the fundamental
fairness exception, [Israel] allege[d] [that] he
received ineffective assistance of counsel in
violation of his Sixth Amendment right." This
Court's decision was affirmed by the Delaware
Supreme Court.

> FN1. Israel's conviction became final in
> 1986 with the issuance of the mandate
> under Delaware Supreme Court Rule 19 in
> *Israel v. State,* 514 A.2d 413 (Del.1986).

> FN2. *State v. Israel,* 1996 Del.Super.
> LEXIS 87 *4-5 (Del. Super .) affirmed
> *Israel v. State,* 682 A.2d 626 (Del.1996)
> (Table).

> FN3. *Israel,* 1996 Del.Super. LEXIS 87 *5.

Israel had also filed a motion for modification of
sentence in November 1998. This Court notes that
Israel's 1996 motion for postconviction relief
contained a claim that Mr. Eaton had not objected
to an incorrect sentence. Israel argued that Mr.
Eaton should have objected to the 20 year
mandatory portion of his life sentence for the Rape
conviction. In denying Israel's motion, this Court
held that "[s]ince [Israel] was convicted and
sentenced prior to July 9, 1986, his sentence was
not affected by the amendment. [Citation omitted].
Thus, the sentence was properly imposed and Mr.
Eaton was under no duty to object to sentencing on
the basis of an amendment which had not yet come
into existence." [FN4]

> FN4. *State v. Israel,* Del.Super., ID No.
> 85002615DI, Cooch, J. (Jan. 6, 1999)
> (Let.Op.).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 2

Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

2. Israel argues two grounds for postconviction relief in his current motion. Israel's first argument is that he was "entitled to a jury instruction of the lesser included offense for burglary first degree and attempt[ed] burglary second degree." [FN5] His second argument is that the prosecutor knowingly " presented false evidence in the form of [a] police officer testifying falsely regarding shoeprints evidence." [FN6] Both of these arguments were essentially argued in previous court proceedings and have only been reframed by Israel in order to avoid the procedural bars of Superior Court Criminal Rule 61(i)(1) and (i)(4). Rule 61(i)(1) bars postconviction relief to a petitioner who files a motion more than three years after the judgment of conviction becomes final, and (i)(4) bars relief for any ground that was formerly adjudicated in the proceedings leading up to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding.

> FN5. Defendant's Memorandum of Law in Support of Rule 61 Motion for Postconviction Relief at 6 (hereinafter " Def's Memo. at _").
>
> FN6. Def's Memo. at 15.

**\*2** Israel argues that he was entitled to a jury instruction for the lesser included offense of burglary first degree and attempted burglary second degree because the State "failed to meet it[s] burden of specifying the particular felony intent [and] failed to specify a felony intent existed at the time of the breaking and entering." [FN7] He asserts that he was entitled to the jury instruction because "it is clearly apparent on the face of the record, there was no evidence to support the felonious intent required by law for the charge [of] burglary first degree." [FN8]

> FN7. Def's Memo. at 9.
>
> FN8. Def's Memo. at 9.

Israel's second argument is that the "prosecutor

knowingly presented false testimony" [FN9] when she allowed a police expert witness to testify that the shoe prints found at the scene of one of the crimes were from "an athletic type-shoe, a sneaker-type shoe." [FN10] Israel argues that this was false testimony because an FBI report sent to the New Castle County Police Chief stated that "the shoe print lifts are too limited to determine the shoe sole design, manufacturer or brand name of the shoe making these shoe prints." [FN11]

> FN9. Defendant's Motion for Postconviction Relief at 3 (hereinafter " Def's Mot. at _").
>
> FN10. Def's Memo at 15.
>
> FN11. Def's Memo at 15.

3. Before addressing the merits of any claim raised in a motion seeking postconviction relief, the Court must first apply the rules governing the procedural requirements of Super. Ct.Crim. R. 61.[FN12] Rule 61(i)(1) provides that "[a] motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court." [FN13]

> FN12. *Bailey v. State,* Del.Supr., 588 A.2d 1121, 1127 (1991); *Younger v. State,* Del.Supr., 580 A.2d 552, 554 (1990) ( *citing Harris v. Reed,* 489 U.S. 255, 265 (1989)).
>
> FN13. Super. Ct.Crim. R. 61(i)(1).

Rule 61(i)(4) provides that "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice." [FN14] "The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                     Page 3

Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

interest of justice [exception under Rule 61(i)(4) ] has been narrowly defined to require the movant to show that the trial court lacked the authority to convict or punish him." [FN15]

> FN14. Super. Ct.Crim. R. 61(i)(4).

> FN15. *State. Wright,* Del.Super., 653 A.2d 288, 298 (1994) (citing *Flamer v. State,* Del.Supr., 585 A.2d 736, 746 (1990)).

However, the procedural bars of Rule 61(i) may potentially be overcome by Rule 61(i)(5), which provides that "[t]he bars to relief in paragraph (1) ... shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." "The " fundamental fairness" exception in Superior Court Criminal Rule 61(i)(5), however, is narrow and is applied only in limited circumstances.[FN16]

> FN16. *Younger,* 580 A.2d at 555.

Superior Court Criminal Rule 61(d)(4) provides that if it "plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified." [FN17]

> FN17. Super. Ct.Crim. R. 61(d)(4)

\*3 4. Israel has filed this motion eighteen years after the judgment of conviction had become final. Therefore, pursuant to Rule 61(i)(1), Israel's motion for postconviction relief is summarily dismissed as being time barred. Israel made a claim in his direct appeal of his conviction to the Delaware Supreme Court that there was insufficient evidence to support a guilty verdict for his conviction of burglary first degree and attempted burglary second degree, which is similar to the claim he makes now that he

was entitled to a jury instruction for criminal trespass because there was not sufficient evidence to support the charges of burglary first degree and attempted burglary second degree.[FN18] In his direct appeal, Israel also made a claim that the trial court abused its discretion in ruling that a police witness was qualified as a shoe expert, which is in essence, the same claim as his argument that the prosecutor knowingly used false testimony of the police.

> FN18. *Israel,* 514 A.2d 413 at 413.

The Court holds that the claims offered in the second motion for postconviction relief have already been presented by Israel in previous proceedings. Israel has attempted to attack the sufficiency of the evidence supporting his burglary conviction a second time by framing the issue as an error of law question.[FN19] He has also attempted to attack the legitimacy of the police expert witness's testimony again by framing the question as *Brady* violation and prosecutorial misconduct question.[FN20] While these two new questions are not exactly the same as the claims raised in the prior proceedings, this Court finds that they encompass the same subject matter that has been decided and this motion for postconviction relief is nothing more than an attempt by Israel to avoid the time bar of Rule 61(i)(1).

> FN19. In his direct appeal, Israel attacked the sufficiency of the evidence supporting his burglary convictions because there was not enough evidence to find that he was armed with a knife.

> FN20. Israel attacked the introduction of the police expert witness's testimony on the grounds that he was not qualified to be admitted as an expert.

5. Additionally, the claims in Israel's second motion for postconviction relief are without merit and do not reach the exception under Rule 61(i)(5). [FN21] Israel's first claim, in which he argues that the State "failed to meet it[s] burden of specifying the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                 Page 4

Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)
(Cite as: Not Reported in A.2d)

particular felony intent [and] failed to specify a felony intent existed at the time of the breaking and entering," thereby entitling him to a jury instruction on the lesser included offense of criminal trespass, is based on a repealed version of the Delaware State Criminal Code. Israel has relied on *Lewis v. State,* which holds that "[a]n indictment for burglary is required to specify the particular felony the defendant intended to commit following his breaking and entering ... and that felonious intent must exist at the time of the breaking and entering. [FN22] However, *Lewis* was decided under the former burglary statute, 11 *Del. C.* § 392, which required the indictment to specify the particular felony the defendant intended to commit.[FN23] Section 392 was revised in 1974 and became 11 *Del. C.* § 826, which no longer required the State to prove felonious intent.[FN24] Instead, § 826 reads that the State must only prove that the defendant intended to commit a crime, without reference to a specific level of crime. The jury found Israel guilty of the crime of theft in connection with the burglary charges and that the Delaware Supreme Court affirmed that verdict, therefore the State met its burden and Israel's claim is summarily dismissed. Rule 61(i)(5) does not grant Israel relief because Israel has misread the applicable statute, 11 *Del. C.* § 826, and has not shown a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."

FN21. Rule 61(i)(5), provides that "[t]he bars to relief in paragraph (1) ... shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."

FN22. *Lewis v. State,* 251 A.2d 197, 198 (Del.1969) citing *State v. Minnick,* Del., 168 A.2d 93 (Del.1960).

FN23. 11 *Del. C.* § 392 at Comment, 1970 Cumulative Pocket Part (1970).

FN24. In *Delaware Criminal Code: With Commentary 1973,* the editors explain that "[b]ecause burglary was [historically] a capital offense, judges and juries took a highly technical view of the crime. [Citation omitted]. Therefore the old law contained many refinements upon the requirements of breaking and entering. [Citation omitted]. An intent to commit a felony, existing prior to the breaking and entry, was an element of the offense." (Commentary § 824). The pre-1955 revised Code still contained a severe penalty for burglary first degree. The pre-1955 revision, § 401 Burglary at night with intent to murder or rape, provided for a fine not less than $500, whipped with not less than 10 nor more than 40 lashes, and imprisoned not less than 3 nor more than 25 years.

**\*4** Israel's second claim, that the "prosecutor knowingly presented false testimony," [FN25] when she allowed a police expert witness to testify that the shoe prints found at the scene of one of the crimes were from "an athletic type-shoe, a sneaker-type shoe," is also without merit. Israel relies on the FBI report that stated, in summary, that the shoe prints recovered at one the crime scenes were too indistinct to be used to identify the "sole design, manufacturer or brand name of the shoe making these shoe prints." Israel's argument is as follows: if the FBI stated that the prints could not be used to make a positive identification, then the police witness lied when the witness said the prints were made by "an athletic type-shoe, a sneaker-type shoe" and that the prosecutor knew of the lie. However, the witness's statement is not at odds with the FBI report. The witness did not try and identify " sole design, manufacturer or brand name" of the shoe that made the prints; instead, he stated his expert opinion, for which he was qualified, that the print was made by a sneaker or athletic shoe as opposed to another type of shoe. The prosecutor in closing specifically stated that:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    Page 5

Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

> FN25. Defendant's Motion for Postconviction Relief at 3 (hereinafter " Def's Mot. at _").

"[t]he shoe prints, [as stated by] Mr. Eaton, were not matched to [Israel's] shoes. Well, it was not testified to that they were compared to his shoes and they were not his shoes. All they simply said was there was a partial print ... but there was just not enough material for them to be able to make a comparison. They needed more than that to be able to make a comparison. They needed more than that to be able to make a match and they just didn't have it. And we are not going to come in here and say there was evidence that wasn't, that there was a shoe print identification."

There is no evidence in the record to sustain Israel's claim that the "prosecutor knowingly presented false testimony." Rule 61(i)(5) does not grant Israel relief because Israel has failed to show any evidence of a "colorable claim that there was a miscarriage of justice because of a constitutional violation [a *Brady* violation or misconduct by the prosecutor] that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."

For the foregoing reasons, Defendant's Motion for Postconviction Relief is SUMMARILY DENIED.

IT IS SO ORDERED.

Del.Super.,2004.
State v. Israel
Not Reported in A.2d, 2004 WL 2240158 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

869 A.2d 327                                                                                      Page 1

869 A.2d 327, 2005 WL 535349 (Del.Supr.)
**(Cite as: 869 A.2d 327)**

**H**
Israel v. StateDel.Supr.,2005.(The decision of the
Court is referenced in the Atlantic Reporter in a '
Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Lee A. ISRAEL, Defendant Below-Appellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 476,2004.**

Submitted Jan. 18, 2005.
Decided Feb. 25, 2005.

Court Below-Superior Court of the State of
Delaware, in and for New Castle County, Cr. ID.
85002615DI.

Before STEELE, Chief Justice, HOLLAND and
BERGER, Justices.

*ORDER*

**\*1** This 25th day of February 2005, after careful
consideration of the appellant's opening brief and
the State's motion to affirm, we find it manifest that
the judgment of the Superior Court should be
affirmed on the basis of the Superior Court's
well-reasoned decision dated September 24, 2004.
The Superior Court did not err in concluding that
Israel's second motion for postconviction relief was
time-barred and that Israel had failed to overcome
this procedural hurdle.

NOW, THEREFORE, IT IS ORDERED that the
judgment of the Superior Court is AFFIRMED.

Del.Supr.,2005.
Israel v. State
869 A.2d 327, 2005 WL 535349 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Pauls v. KearneyD.Del.,2002.Only the Westlaw
citation is currently available.
United States District Court, D. Delaware.
Donald PAULS, Petitioner,
v.
Rick KEARNEY, Warden, and Attorney General of
the State of Delaware, Respondents.
**No. Civ.A. 01-472-GMS.**

Sept. 4, 2002.

After petitioner's state court convictions for
robbery, assault, burglary, and weapons offenses
were affirmed on direct appeal, 476 A.2d 157,
petitioner filed for writ of habeas corpus. The
District Court, Sleet, J., dismissed without prejudice
for failure to exhaust state court remedies.
Petitioner again filed for habeas relief. The District
Court, Sleet, J., held that: (1) filing date for habeas
petition was date that petitioner signed it, and (2)
application of equitable tolling doctrine did not
render petition timely.

Petition dismissed.
West Headnotes
**[1] Habeas Corpus 197 ☞603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Filing date for habeas petition, for statute of
limitations purposes, was date that petitioner signed
it, in absence of proof that he delivered petition to
prison officials for mailing on different date. 28
U.S.C.A. § 2254.

**[2] Habeas Corpus 197 ☞603**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief

197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Application of equitable tolling doctrine for time
period during which prior habeas petition was
pending, did not render successive habeas petition
timely, for purposes of one-year limitations period;
more than one year lapsed during which no
proceedings of any kind were pending before any
court before successive petition was filed. 28
U.S.C.A. § 2254.

*MEMORANDUM AND ORDER*
SLEET, J.
**\*1** Following a jury trial in the Delaware Superior
Court, Donald Pauls was convicted of robbery,
assault, burglary, possession of a deadly weapon by
a person prohibited, and six counts of possession of
a deadly weapon during the commission of a felony
("PDWDCF"). Pauls is currently serving his
sentences at the Sussex Correctional Institution in
Georgetown, Delaware. He has filed with the court
the current petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his six
PDWDCF convictions and sentences. For the
reasons set forth below, the court will dismiss Pauls'
petition as time barred by the one-year period of
limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On January 19, 1983, Donald Pauls entered a
convenience store in Seaford, Delaware, where a
clerk was attending and cleaning the store. No one
else was in the store. The clerk tried to resist as
Pauls approached her with a broken glass bottle,
and a piece of glass lodged in her hand. Pauls hit
the clerk in the head with a stick, yet she managed
to activate a silent alarm. He kicked her in the
stomach and again hit her with the stick. The clerk
ran out the front door, but Pauls followed her and
kicked her again. She then ran back inside the store,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

but Pauls followed and ordered her to open the cash registers. Pauls emptied the cash registers and attempted to flee. By that time, the Seaford police had responded to the silent alarm, and apprehended Pauls as he ran out the door.

Based on these events, Pauls was charged with first degree robbery, first degree assault, second degree burglary, and possession of a deadly weapon by a person prohibited. Pauls was also charged with six counts of PDWDCF, one count for possessing each of the two weapons (the broken bottle and the stick) during each of the three underlying felonies (robbery, assault, and burglary). On April 27, 1983, a jury in the Delaware Superior Court found Pauls guilty as charged. The Superior Court sentenced Pauls on July 22, 1983, to six consecutive three-year terms for PDWDCF.[FN1] On direct appeal, the Delaware Supreme Court affirmed. *Pauls v. State,* 476 A.2d 157 (Del.1990).

> FN1. The Superior Court also sentenced Pauls to an additional twenty-two years on the remaining counts. Pauls' current petition challenges only his six PDWDCF convictions and sentences.

Pauls then initiated postconviction proceedings in the Superior Court by filing a motion for postconviction relief on February 3, 1987, which was denied on October 21, 1987. The Delaware Supreme Court affirmed. *Pauls v. State,* No. 377, 1987, 1989 WL 8105 (Del. Jan.12, 1989). Pauls also filed a motion for correction of sentence on May 20, 1993, which the Superior Court denied on July 23, 1993. The Delaware Supreme Court dismissed Pauls' appeal because he failed to file a brief and an appendix. *Pauls v. State,* No. 302, 1993, 1994 WL 10858 (Del. Jan.5, 1994).

Pauls took no further action until April 8, 1997, when he filed a petition for federal habeas corpus relief, which was dismissed without prejudice for failure to exhaust state court remedies.[FN2] *Pauls v. Kearney,* Civ. A. No. 97-358-GMS, 2000 WL 1346693 (D.Del. Sept.12, 2000). On September 28, 2000, he returned to the Superior Court and filed a " motion for writ of error," w hich was treated as a

motion for postconviction relief and denied on October 10, 2000. The Delaware Supreme Court affirmed. *Pauls v. State,* No. 520, 2000, 2001 WL 233654 (Del. Mar.6, 2001).

> FN2. The court's docket reflects that Pauls' prior federal habeas petition was filed on June 27, 1997. The petition itself, however, is dated April 8, 1997. For purposes of the current analysis, the court deems Pauls' prior federal habeas petition filed on April 8, 1997.

*2 Pauls has now filed the current petition for federal habeas corpus relief. In his petition, Pauls asserts that his six PDWDCF convictions, based on the possession of two weapons during three felonies, are contrary to the legislative intent of the Delaware statute. (D.I. 2 at 5.) He asks the court to vacate three of those six convictions. (*Id.*) The respondents argue that Pauls' petition is subject to a one-year period of limitation that expired before he filed it, and ask the court to dismiss the petition as time barred.

### II. DISCUSSION

#### A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of habeas petitions by state prisoners. *Stokes v. District Attorney of County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.) , *cert. denied,* 534 U.S. 959, 122 S.Ct. 364, 151 L.Ed.2d 276 (2001). Effective April 24, 1996, the AEDPA provides in relevant part:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ...

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

28 U.S.C. § 2244(d). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their habeas petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998) (prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Pauls' convictions became final long before the AEDPA was enacted. The Delaware Supreme Court affirmed Pauls' convictions and sentences on April 9, 1984. Although Pauls did not seek review by the United States Supreme Court, the ninety-day period in which he could have filed a petition for a writ of certiorari is encompassed within the meaning of " the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Pauls' convictions became final in July 1984, several years before the enactment of the AEDPA. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

[1] The court's docket reflects that Pauls' current habeas petition was filed on July 10, 2001. (D.I.2.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. *Id.* at 113. Pauls has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated June 25, 2001. In the absence of proof respecting the date of delivery, the court deems Pauls' petition filed on June 25, 2001, the date he signed it. *See Eley v. Snyder,* Civ. No. 00-34-GMS, 2002 WL 441325, *2 (D. Del. Mar 20, 2002).

*3 Even so, Pauls' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not necessarily require dismissal of the petition

as untimely, because the one-year period may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory and Equitable Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). An application for state postconviction review is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

In addition, the one-year period of limitation is subject to equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted).

Relevant to the tolling analysis in the case at hand are Pauls' prior federal habeas petition and his motion for writ of error.[FN3] As described previously, Pauls filed a federal habeas petition on April 8, 1997, which was dismissed without prejudice for failure to exhaust state court remedies on September 12, 2000. The United States Supreme Court has ruled that the one-year period cannot be statutorily tolled under § 2 244(d)(2) while a prior

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4

Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

federal habeas petition was pending. *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). *Duncan,* however, left open the possibility that the one-year period may be equitably tolled while a prior federal habeas petition was pending. *Id.* at 183 (Stevens, J., concurring).

> FN3. The court is aware of Pauls' earlier postconviction proceedings that terminated prior to the enactment of the AEDPA. Prior to April 24, 1996, the federal habeas statute imposed no specific period of limitation for filing habeas petitions. Thus, any postconviction proceedings that terminated prior to April 24, 1996, are not relevant to the tolling analysis.

[2] The court need not determine whether the one-year period should be equitably tolled while Pauls' prior federal habeas petition was pending. As the following analysis demonstrates, even if the court assumes that the one-year period was equitably tolled from April 8, 1997, through September 12, 2000, more than one year lapsed during which no proceedings of any kind were pending in any court before Pauls filed the current habeas petition.

The one-year period of limitation began running on April 24, 1996, when the AEDPA was enacted. By the time Pauls filed his prior federal habeas petition on April 8, 1997, 350 days had lapsed during which no postconviction proceedings were pending. These 350 days must be counted toward the one-year period. The one-year period began running again on September 13, 2000, the day after the court dismissed Pauls' prior federal habeas petition. An additional fifteen days lapsed before Pauls filed his motion for writ of error in the Superior Court on September 28, 2000. Assuming that the one-year period was statutorily tolled while the motion for writ of error was pending until March 6, 2001, [FN4] another 110 days passed before Pauls filed the current federal habeas petition on June 25, 2001.

> FN4. It appears that the one-year period should not be statutorily tolled while Pauls'

motion for writ of error was pending because the Delaware Supreme Court ruled that it was untimely. *Pauls,* 2001 WL 233654 at ----1. Because the Delaware Supreme Court found it untimely, it was not "properly filed" for statutory tolling purposes. *See Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); *Woods v. Kearney,* 215 F.Supp.2d 458, 2002 WL 1845006, *4 (D.Del. Aug.9, 2002). The court need not make such a determination, however, because the petition is untimely even if the one-year period was statutorily tolled while Pauls' motion for writ of error was pending.

*4 In sum, 475 days lapsed during which no proceedings of any kind were pending in any court before Pauls filed his current habeas petition. Even if the court tolls each of the periods of time described above during which various proceedings were pending, more than one year lapsed during which no proceedings were pending. Accordingly, the court will dismiss Pauls' petition as time barred. [FN5]

> FN5. The court notes that Pauls has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition in a timely manner. Indeed, he has not provided any reason for his delay in filing the current petition. Thus, other than the delay that occurred while Pauls' prior federal habeas petition was pending, the court can discern no circumstances which would permit applying the doctrine of equitable tolling.

## III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5

Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Pauls' habeas petition was filed beyond the one-year period of limitation. Applying the statutorily tolling provision and the doctrine of equitable tolling does not render the petition timely. The court is persuaded that reasonable jurists would not debate otherwise. Pauls has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:
1. Donald Pauls' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.
2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2002.
Pauls v. Kearney
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00472 (Docket) (Jul. 10, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                            Page 1

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Thomas v. SnyderD.Del.,2001.Only the Westlaw
citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney
General of the State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

### MEMORANDUM AND ORDER
SLEET, District J.
*1 Kevin A. Thomas was convicted of first degree
murder and possession of a deadly weapon during
the commission of a felony. He is presently
incarcerated in the Delaware Correctional Center in
Smyrna, Delaware, where he is serving a sentence
of life imprisonment. Thomas has filed with this
court a petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. As explained below, the court
will dismiss Thomas' petition as time barred by the
one-year period of limitation prescribed in 28
U.S.C. § 2244(d).

### I. BACKGROUND

On June 28, 1993, following a jury trial in the
Delaware Superior Court, Kevin A. Thomas was
convicted of first degree murder and possession of a
deadly weapon during the commission of a felony.
The evidence at trial demonstrated that on
September 13, 1992, Thomas shot David Turner in
the face and killed him. Thomas was seventeen
years old at the time. He was sentenced to life in
prison without parole on the murder conviction and
to a consecutive sentence of five years in prison on
the weapons conviction. The Delaware Supreme
Court affirmed Thomas' conviction and sentence on
September 21, 1994.

On December 18, 1996, Thomas filed in state court
a motion for post-conviction relief pursuant to Rule
61 of the Delaware Superior Court Criminal Rules.
The trial court summarily dismissed Thomas' Rule
61 motion on December 23, 1996. Thomas
appealed to the Delaware Supreme Court. His
subsequent motion to withdraw the appeal was
granted on March 11, 1997. Thomas filed a second
Rule 61 motion for post-conviction relief on March
27, 1997, which was summarily dismissed on May
9, 1997. Again, Thomas appealed to the Delaware
Supreme Court. The Court affirmed the order of
dismissal on November 24, 1997.

Thomas has now filed with this court the current
petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254. In his petition Thomas articulates
four separate grounds for relief: (1) The searches of
his residence and car were in violation of the Fourth
Amendment, and all evidence seized from these
searches should have been suppressed; (2) The trial
court erred in admitting identification testimony that
was the result of an impermissibly suggestive
photographic identification procedure; (3) The trial
court violated his constitutional right to due process
by giving a supplemental jury instruction pursuant
to *Allen v. United States,* 164 U.S. 492 (1896); and
(4) His constitutional rights were violated when
police questioned him without a parent or legal
guardian present. The respondents argue that the
petition is subject to a one-year period of limitation
that expired before Thomas filed it. Thus, they
request that the court dismiss the petition as time
barred.

### II. DISCUSSION

#### A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), Congress amended the
federal habeas statute by prescribing a one-year

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

period of limitation for the filing of § 2254 habeas petitions by state prisoners. *Stokes v. District Attorney of the County of Philadelphia,* 247 F.3d 539, 541 (3d Cir.2001). Effective April 24, 1996, the AEDPA provides:

**\*2** (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998) (prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of " the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

**\*3** Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d) 's period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation. FN1

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000)

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation.FN2 Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period. FN3

> FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was

tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

> FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

*\*4* only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, *quoting United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2) 's tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in

which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

*\*5* Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:
1. Thomas' petition for a writ of habeas corpus pursuant to 28 U .S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.
2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.
3. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Bailey v. SnyderD.Del.,1996.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Coy E. BAILEY, Jr., Petitioner,
v.
Robert SNYDER, Warden, and M. Jane Brady, Attorney General of the State of Delaware, Respondents.
**Civ. A. No. 96-85-SLR.**

July 31, 1996.

Coy E. Bailey, Jr., pro se.
Loren C. Meyers, Chief of Appeals Division, and Thomas E. Brown, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for respondents.

*MEMORANDUM OPINION*
SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Presently before the court is petitioner Coy E. Bailey's application for habeas corpus relief brought pursuant to 28 U.S.C. §2254. (D.I. 2) Petitioner, a state prisoner at the Delaware Correctional Center in Smyrna, Delaware, is serving a life sentence plus fifteen years for first degree murder and possession of a deadly weapon during commission of felony. He filed this application on January 10, 1996, seeking a writ of habeas corpus on the grounds that he was twice subjected to double jeopardy and that the court failed to instruct the jury on a lesser charge. Respondents have filed an answer, contending that petitioner has procedurally defaulted one of his double jeopardy claims, that the second double jeopardy claim contravenes the clear findings of fact by the Delaware Supreme Court, and that the trial court did not commit constitutional error in refusing the lesser offense

instruction. Respondents urge the court to deny the requested relief and dismiss the petition without further proceedings. For the reasons set forth below, petitioner's application for habeas corpus relief will be denied.

II. BACKGROUND

In June 1978, petitioner was arrested and charged in the shooting death of Frank Dukes. At trial, the State presented evidence that petitioner had shot the victim once as the latter was setting up bottles on a makeshift firing range. A second shot, fired at close range through the neck, killed the victim. (D.I. 8 at 3-4) In his defense, petitioner claimed that another acquaintance, Michael Sponaugle, had done the shooting. Mr. Sponaugle testified against petitioner at trial. (D.I. 4 at A11) On July 15, 1980, a superior court jury convicted petitioner of first degree murder and possession of a deadly weapon during the commission of a felony. (D.I. 4 at A15) After the jury deadlocked in the penalty phase, the court sentenced petitioner to life without parole plus thirty years. On appeal, the Delaware Supreme Court reversed the convictions and remanded for a new trial on the ground, *inter alia,* that "the prosecution employed improper, unprofessional and prejudicial trial tactics in reserving the bulk of its concluding comments for rebuttal." *Bailey v. State,* 440 A.2d 997 (Del. 1982).

Petitioner was retried in 1983 and 1984, both resulting in mistrials. In the 1983 trial, the court declared a mistrial *sua sponte* after three witnesses made reference during their testimony to petitioner's first trial and one referred to his conviction.[FN1] The first witness to do so, petitioner's ex-wife, responded to a question by defense counsel concerning "a prior proceeding" by asking "Do you mean the last trial?" Neither the State nor the defendant objected to the testimony. *Bailey,* 521 A.2d at 1073. The second mention of the 1980 trial also resulted from defense counsel's questioning:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

Q. When is the first time you ever communicated these alleged conversations to the authorities?
A. When?
Q. Yes.
A. It was when this first trial, these new proceedings started, two, three months ago maybe.

**\*2** *Id.* After the witness gave this response, the court heard argument from counsel out of the presence of the jury. Defendant moved for a mistrial based on disclosure of the previous trial, or, in the alternative, for an instruction to the jury. In response to a question from the court, the prosecutor stated that the witnesses had been instructed not to mention the first trial, and also noted that the testimony had resulted from the defense's own questioning. The court then advised that a cautionary instruction or a *voir dire* of the jury might serve only to draw attention to the issue. Defense counsel renewed the motion for a mistrial, which the court denied. *Id.* at 1073-74.

The State then called Gary Lee Hastings, who had been incarcerated with petitioner, to testify to petitioner's efforts to have Michael Sponaugle killed. The third mention of petitioner's previous trial followed:
Q. Did you discuss with Mr. Bailey in addition to the contract the charges for which you were in jail?
A. Yes, ma'am, we had discussed that.
Q. Did you discuss the charges for which he was in jail?
A. No, ma'am, it was common knowledge to the institution what Mr. Bailey was doing time for: a life sentence for murder.

*Id.* at 1074. At that, the court sent the jury out of the courtroom and declared a mistrial. Neither defense counsel nor the State objected.

In 1984 petitioner was tried again, and a mistrial resulted from the jury's inability to reach a verdict. In April 1985, petitioner was tried yet again. Before the prayer conference for that trial, the court prepared a draft of the jury instructions. That draft, like the instructions given in petitioner's previous trials, included an instruction on second degree murder. *Id.* at 1093. At the prayer conference, however, petitioner's counsel communicated to the

court petitioner's desire to have the second degree murder instruction deleted. The State did not oppose the request, and the court acquiesced. On the following day, however, petitioner changed his mind and requested that the second degree murder instruction be given. The court ruled that such an instruction would not be justified by the evidence produced at trial and refused to give the instruction. *Id.* The jury convicted petitioner of first degree murder and possession of a deadly weapon during the commission of a felony. On appeal, petitioner raised several challenges to his conviction, including claims that 1) jeopardy had attached during the 1983 trial and his subsequent trials constituted double jeopardy; and 2) the court had erred in not instructing the jury on second degree murder. The Delaware Supreme Court affirmed.

On November 4, 1988, petitioner filed an application for federal habeas relief. *Bailey v. Redman,* CA No. 88-622-MMS (D. Del. Aug. 8, 1991). He based his petition on two grounds: 1) the court's failure to instruct the jury on second degree murder; and 2) double jeopardy, based on the prosecutor's misconduct during his 1980 trial, which petitioner characterized as "a course of conduct that was intended to ... avoid an acquittal." *Id.* Respondents argued that although petitioner had presented a double jeopardy claim to the Delaware Supreme Court on direct appeal, it was based on a different theory than the double jeopardy claim presented in his federal habeas petition. The court agreed, and found that petitioner had not presented the state courts with a fair opportunity to address his theory that jeopardy attached during the 1980 trial. The petition, therefore, was dismissed for failure to exhaust state remedies on the double jeopardy claim. *Id.*

**\*3** On October 6, 1994, petitioner filed a motion for postconviction relief in Superior Court pursuant to Rule 61. The court dismissed the motion as time barred by Rule 61(i)(1), which requires such motions to be filed within three years after the conviction becomes final. *State v. Bailey,* Cr. Act. No. IK78-06-0053 and No. IK78-07-0205 (Del. Super. Dec. 13, 1994). The Delaware Supreme Court affirmed, finding petitioner's claims barred by Rule 61(i)(1) and, in the alternative, by Rule 61(3),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 3

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

which provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred," unless the movant can establish cause and prejudice. *Bailey v. State,* 659 A.2d 227 (Del. 1995).


## III. DISCUSSION

### A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). In making this determination, the court should inquire as to whether there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). In a case where the court determines that the petitioner has not exhausted all state remedies, the court may also determine whether "recourse to state collateral review whose results have effectively been predetermined ..." would justify review by the district court. *Castille v. Peoples,* 489 U.S. 346, 350 (1989).

The requirement that a petitioner exhaust all available state remedies prior to seeking federal habeas corpus relief is statutorily mandated under 28 U.S.C. § 2254(b) and (c). Comity is the rationale underlying the exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary "[f]ederal intrusions into state criminal trials," *Engle v. Isaac,* 456 U.S. 107, 128 (1982), the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." *Rose v. Lundy,* 455 U.S. 509, 518 (1982) ; *see also Santana v. Fenton,* 685 F.2d 71, 77 (3d Cir. 1982), *cert. denied,* 459 U.S. 1115 (1983).

To exhaust state remedies, a petitioner must have raised in the state courts the factual and legal premises of the claims for relief he asserts in the

federal proceeding. *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir. 1986).
"It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

*O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir. 1987) (citations omitted).

\*4 Petitioner has articulated three claims for relief in the petition presently before the court. First, he claims that the trial court, by refusing to instruct the jury on the lesser charges of second degree murder and manslaughter, violated petitioner's due process rights. Second, he contends that because of the State's misconduct in his 1980 trial, jeopardy attached and his subsequent trials violated the constitutional prohibition on double jeopardy. Finally, petitioner claims that his 1984 and 1985 trials were barred by the double jeopardy clause because the State deliberately provoked a mistrial in his 1983 trial.

There is no dispute that petitioner has exhausted his state remedies with respect to his claim that the court erred in failing to instruct the jury on a lesser charge. He presented this claim in his direct appeal and in his postconviction motion before the state courts. (D.I. 10) Likewise, petitioner presented the double jeopardy claim based on the theory that the State deliberately provoked a mistrial in 1983 to the Delaware Supreme Court on direct appeal. (D.I. 10) This claim, too, is exhausted.

With respect to his second double jeopardy claim, after petitioner's application for federal habeas corpus was denied for failure to exhaust, petitioner presented his claim that jeopardy attached during the 1980 trial to the state courts in his Rule 61 motion. Both the New Castle County Superior Court and the Delaware Supreme Court denied petitioner's motion on the grounds that it was not timely filed. By presenting this claim to the state courts in his postconviction motion, petitioner exhausted his state remedies.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

### B. Procedural Default

In rejecting petitioner's postconviction motion, the Superior Court relied on Superior Court Criminal Rules 61(i)(1) and (3), which bar consideration of motions filed more than three years after a conviction becomes final. The Delaware Supreme Court affirmed this decision. The United States Supreme Court has held that a state court ruling resting on an independent and adequate state procedural ground will bar federal review absent a showing of cause for and prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). Allowing applicants for federal habeas relief to proceed in federal court where, as here, their own default is responsible for the absence of available state remedies would undermine the principles of comity and federalism that underlie the exhaustion requirement. *Coleman v. Thompson,* 501 U.S. 722 (1991). The state courts' application of Rule 61(i)'s procedural default provision is a "plain statement" under *Harris v. Reed,* 489 U.S. 255 (1989), that the state court decisions rest on independent state grounds. State rules setting time limits on postconviction motions have also been held adequate to bar federal review under *Wainwright. See Bond v. Fulcomer,* 864 F.2d 306 (3d Cir. 1989) (considering analogous Pennsylvania time bar); *Caruso v. Zelinsky,* 689 F.2d 435 (1982) (involving New Jersey time bar); *DeShields v. Snyder,* 830 F. Supp. 816, 817-18 (D. Del. 1993).

**\*5** Petitioner argues that while Rule 61 is independent, it is not adequate because the time limitation provision came into effect in 1989, two years after his conviction became final. In determining whether a state procedural ground is adequate for the purposes of barring federal review, the court must determine whether it serves a legitimate state interest, *Henry v. Mississippi,* 379 U.S. 443, 447 (1965), whether the rule is clear, *Wainwright,* 433 U.S. at 85; *Reynolds v. Ellingsworth,* 843 F.2d 712, 717 (3d Cir.), *cert. denied,* 488 U.S. 960 (1988), and whether the state courts have consistently applied the rule. *Wainwright,* 433 U.S. at 85-86; *Bond,* 864 F.2d at 310. The state courts have stated that Rule 61 (i)(1) serves the interest of limiting stale claims. *State v. Dickens,* 602 A.2d 95, 98 (Del. Super. 1989), *aff'd,*

577 A.2d 752 (Del. 1990) (table). This is a legitimate purpose, and the rule obviously furthers that end. *See Caruso,* 689 F.2d at 440. The rule is also clear in its three-year time limitation. Finally, the state courts have been consistent in applying the rule, and had been so before petitioner's three-year limit ran out. The Delaware Supreme Court affirmed petitioner's conviction in 1987. The order promulgating Rule 61 was issued the same year. The order set an effective date of January 1, 1989 for the three-year time bar. In addition, as early as July 1989, the Delaware Supreme Court had held that the time bar would apply to convictions finalized before the effective date of the rule. *Boyer v. State,* 562 A.2d 1186 (Del. 1989). It has held so consistently since that time. *See, e.g., Bailey v. State,* 588 A.2d 1121 (Del. 1991); *Bagwell v. State,* 586 A.2d 1201 (Del. 1991). At the time the court decided *Boyer,* petitioner still had approximately a year in which to file a postconviction motion. Considering all of these factors, the court concludes that Rule 61(i)(1) is an adequate state procedural ground, notwithstanding the timing of petitioner's conviction.

Because the state courts based their denial of petitioner's postconviction motion on an independent and adequate state procedural ground, this court may not consider the merits of petitioner's second double jeopardy claim unless he can " demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims[] will result in the fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him...." *Id.* at 753, *citing Murray v. Carrier,* 477 U.S. 478, 488 (1986) (emphasis in original).

Petitioner argues that his procedural default resulted from the ineffective assistance of his attorney on direct appeal. The Rule 61(i)(1) default, however, lay not in petitioner's failure to raise the issue on direct appeal (although that was an alternative ground for the Delaware Supreme Court's decision), but in his failure to file a postconviction motion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

within the allotted three years. Petitioner has not articulated any cause for this default. The court, therefore, need not reach the question of whether petitioner has shown any actual prejudice from the alleged violation of federal law. *Presnell v. Kemp,* 835 F.2d 1567, 1582 n.29 (11th Cir. 1988), *cert. denied,* 488 U.S. 1050 (1989). Because petitioner cannot demonstrate cause, his claim of double jeopardy based on the prosecutor's conduct during his 1980 trial must be dismissed. The court will consider the merits of each of petitioner's two remaining claims in turn.

### C. Failure to Instruct on a Lesser Charge

**\*6** Petitioner contends that the trial court's failure to instruct the jury on the lesser included offense of second degree murder violated his due process rights.[FN2] Under Delaware law,
A person is guilty of murder in the second degree when: (1) He recklessly causes the death of another person under circumstances which manifest a cruel, wicked and depraved indifference to human life; or (2) In the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, he, with criminal negligence, causes the death of another person.

11 Del. C. § 635.

A court is not required to instruct a jury on a lesser included offense unless such an instruction is justified by the evidence. *Hopper v. Evans,* 456 U.S. 605, 611 (1982). As discussed by the Delaware Supreme Court, petitioner's defense was that Michael Sponaugle had committed the murder. Petitioner did not offer any evidence concerning his mental state or level of intoxication, nor did he make it an issue in his defense. Thus, a verdict of second degree murder would have been unsupported by the evidence and the trial court properly refused to instruct the jury on the lesser offense. Petitioner contends that failing to instruct on second degree murder in the absence of any claim or evidence by petitioner regarding his mental state unconstitutionally shifted the burden of proving intent from the State to the defendant. This

argument ignores, however, the jury's responsibility to acquit if the State had failed to prove every element of its case, including intent. Petitioner does not claim that the jury was not so instructed. This court, therefore, finds this claim to be without merit.

### D. Double Jeopardy Based on 1983 Trial

Petitioner argues that his retrial was barred because, after three witnesses mentioned the 1980 trial, the court declared a mistrial. Petitioner contends that there was no manifest necessity for declaring a mistrial, and that the Double Jeopardy Clause, therefore, barred his retrial. The Supreme Court has held that "[w]here the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard ... ," of which the deadlocked jury is the prime example. *Oregon v. Kennedy,* 456 U.S. 667, 672 (1982), *quoting United States v. Perez,* 9 Wheat. 579, 580 (1824).

The record of this case indicates that petitioner did not object to the mistrial. In fact, after the second witness mentioned petitioner's previous trial, petitioner specifically requested a mistrial and renewed his motion after discussing other options with the court. Several courts have held that the manifest necessity standard does not apply where a defendant fails to object, or otherwise impliedly consents, to the court's declaration of a mistrial. *United States v. Ham,* 58 F.3d 78, 83 (4th Cir.), *cert. denied,* 116 S. Ct. 513 (1995); *United States v. DiPietro,* 936 F.2d 6, 9-10 (1st Cir. 1991); *Camden v. Circuit Court of the Second Judicial Circuit,* 892 F.2d 610, 615 (7th Cir. 1989), *cert. denied,* 495 U.S. 921 (1990); *United States v. Smith,* 621 F.2d 350, 351 (9th Cir. 1980), *cert. denied,* 449 U.S. 1087 (1981). Implied consent is not presumed, of course, where a defendant has no opportunity to object. *United States v. Jorn,* 400 U.S. 470, 487 (1971). In this case, the trial court removed the jury from the courtroom and apparently gave counsel an opportunity to speak before declaring a mistrial. Petitioner's previous, explicit request for a mistrial, combined with the fact that it appears from the record that petitioner had an opportunity to object to a mistrial had he so desired, lead this court to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 6

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

conclusion that petitioner impliedly consented to the mistrial.

*7 Even if the court were to accept petitioner's assertion that he did not consent, this court finds that there was manifest necessity for the mistrial. Although there are no bright line definitions for determining whether manifest necessity exists, " [t]he reviewing court owes great deference to the trial court when it declares a mistrial because of juror bias, or acts to protect the defendant's rights." *United States v. Bates,* 917 F.2d 388, 394 (9th Cir. 1990) (emphasis added) (citations omitted). A trial court is clearly acting out of manifest necessity when the reason for the mistrial is an error which is certain to lead to a reversal on appeal. *Id.* at 395; *Illinois v. Somerville,* 410 U.S. 458, 464 (1973). As the Delaware Supreme Court noted in affirming petitioner's conviction, it is established law in Delaware that a jury's awareness of a defendant's prior conviction later reversed on appeal is grounds for a mistrial. *Bailey,* 521 A.2d at 1076.

The information volunteered by the three witnesses in this case was inherently prejudicial to the defendant. In addition, the court had already discussed with counsel the possible alternatives to a mistrial: jury *voir dire* or a cautionary instruction. Petitioner made clear his preference for a mistrial, and both the court and counsel noted the likelihood that either of the alternatives would only draw attention to the mentions of petitioner's 1980 trial. To protect defendant from this inherently damning information, the trial court declared a mistrial.

Where defendant himself requests the mistrial, or where a mistrial is mandated by manifest necessity, a retrial will be barred if the prosecutor has intentionally provoked the defendant to make such a request. *Kennedy,* 456 U.S. at 674-76. This standard, the Court warned, is narrow, and requires more than just a showing of bad faith on the part of the prosecutor.
Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.... Only where the governmental

conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 676.

The Delaware Supreme Court, in affirming petitioner's conviction, made a specific factual finding that "the prosecutor did not intentionally cause the *sua sponte* declaration of a mistrial." *Bailey,* 521 A.2d at 1078. Under the statute that governs federal habeas corpus for persons in state custody, the factual findings of a state court are presumed correct unless one of several enumerated exceptions applies. 28 U.S.C. § 2254(d).[FN3] Petitioner argues that the Delaware Supreme Court's finding that the prosecutor did not intentionally cause a mistrial is unsupported by the record, and that the presumption of correctness, therefore, does not apply. *See* 29 U.S.C. § 2254(d)(8). To support this claim, petitioner argues that the witnesses who mentioned his previous trial and conviction would not have done so unless they were coached. He argues that the prosecutor's question, "Did you discuss the charges for which he was in jail?" was intended to elicit testimony that would force a mistrial. As the Delaware Supreme Court noted, however, that question arose in the context of testimony that petitioner, while awaiting trial for murder, had attempted to have the primary witness against him killed. The court concluded that the prosecutor's question sought to establish that petitioner was in custody pending his trial for murder, not that he had already been convicted of that crime. The other two witnesses who mentioned petitioner's previous conviction spoke in response to defense counsel's questions. This court finds no support in the record for petitioner's assertion that the witnesses revealed the prior conviction as a result of the prosecutor's coaching.

*8 Petitioner also asserts that "this prosecutor has a history of improper trial conduct designed and intended to deny defendants a fair trial and to avoid acquittals." (D.I. 3 at 10) To support this claim, petitioner has submitted news clippings concerning an unrelated case in which the prosecuting attorney

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 7

Not Reported in F.Supp., 1996 WL 434932 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

is not identified. Such vague allegations, based upon an inherently unreliable source, do nothing to further petitioner's argument.

Finally, petitioner contends that the prosecutor had only seven days to prepare for the retrial, and thus was motivated to buy time through forcing a mistrial. Assuming that the prosecutor did have a reason to wish the trial delayed, there is no evidence on the record that she took the extreme step of intentionally forcing a mistrial for the sake of buying time. The court concludes, therefore, that the prosecutor did not intentionally force a mistrial, and that petitioner's subsequent trials were not barred by the Double Jeopardy Clause.

### IV. CONCLUSION

For the reasons set forth above, the court will dismiss the application for habeas corpus relief and deny the writ of habeas corpus.

> FN1. The circumstances of the 1983 mistrial are recounted in detail in the Delaware Supreme Court's 1987 decision affirming petitioner's conviction. *Bailey v. State,* 521 A.2d 1069 (Del. 1987).

> FN2. Petitioner also asserts that "the jury was prohibited from considering evidence of intoxication as a mitigating factor concerning intent." (D.I. 14 at 25) In his reply to the state's answer, petitioner states that he intended this to be a distinct ground for relief, separate from his claim concerning the failure to instruct on second degree murder. (D.I. 14 at 29) Petitioner did not raise this claim before the state courts and would now be time-barred by Rule 61(i)(1). Petitioner, therefore, has defaulted his state remedies on this claim and, as discussed above, may not present it to this court absent a showing of cause and prejudice. He has not stated any cause for his default. The court, therefore, will not reach the merits of this claim as an independent ground for relief.

> FN3. Petitioner argues that this presumption does not apply to the findings of the Delaware Supreme Court because the statute applies only to those factual determinations made "after a hearing on the merits." 28 U.S.C. § 2254(d). He also argues, on the same basis, that several exceptions to this rule apply. It is settled law, however, that a state appellate court, having reviewed the trial court record, is considered to have held a hearing for the purpose of this statute. *Sumner v. Mata,* 449 U.S. 539 (1981).

D.Del.,1996.
Bailey v. Snyder
Not Reported in F.Supp., 1996 WL 434932 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:96CV00085 (Docket) (Feb. 21, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2006, I electronically filed the attached

documents with the Clerk of Court using CM/ECF. I also hereby certify that on October

12, 2006, I have mailed by United States Postal Service, the same documents to the

following non-registered participant:

Lee A. Israel
SBI No. 00181371
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: October 12, 2006